**Willie Warren CRAFT and Louis A. DeSalle III, Plaintiffs-Appellants,**

**v.**

**The BOARD OF TRUSTEES OF the UNIVERSITY OF ILLINOIS, Truman O. Anderson, Howard M. Bers, Elizabeth McGrew, and Jack Bulmash, Defendants-Appellees.**

**No. 84–2195.**

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 15, 1986.*

Decided March 28, 1986.

Opinion June 12, 1986.**

---

\* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any Party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). Defendants-appellees have filed a motion to dispense with oral argument and affirm the judgment below based on the briefs and record. Upon consideration, we grant this motion.

\*\* This case was previously decided by unpublished order according to Circuit Rule 35. The defendants-appellees moved for publication of the order as an opinion. The motion is hereby granted.

Kenneth N. Flaxman, Chicago, Ill., for plaintiffs-appellants.

Richard T. Franch, Jenner & Block, Barry Sullivan & Gabrielle L. Sigel, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, and WOOD and RIPPLE, Circuit Judges.

PER CURIAM.

Plaintiffs Willie Warren Craft and Louis A. DeSalle III appeal the district court's denial of their post-trial motion for declaratory and injunctive relief or, in the alternative, for a new trial on the question of damages. Judgment was entered after a jury trial on plaintiffs' claims arising *inter alia* under 42 U.S.C. §§ 1981, 1983, 1985 and 2000d et seq. We affirm for the reasons discussed below.

I

Both plaintiffs enrolled in the Medical Opportunity Program (MOP) at the University of Illinois College of Medicine (University) in 1972. Under the MOP, the College admitted students who would not otherwise have been accepted based on their under-

graduate grade point averages and Medical College Admission Test scores. The MOP afforded participants various special services during the first-year course including a full-time coordinator, a special study room, faculty and upperclass student advisers, remedial learning sessions, and counseling and tutorial programs. This program, funded principally by the University, also received partial funding from a four-year grant from the Department of Health, Education and Welfare (HEW) in 1971.

After both plaintiffs failed the school's "Senior Comprehensive Examination" several times, they were dismissed from the University in 1978. Claiming that the school had not helped them prepare for the test and had not provided them with special support, the plaintiffs brought suit in August 1979 against the University's Board of Trustees, fourteen faculty members and officials, the Director of the Illinois Department of Registration and Education, the Secretary of HEW, and the United States Commissioner of Education. They alleged that the defendants had violated their rights under 31 U.S.C. § 1242 and 42 U.S.C. §§ 1983, 1985, and 2000d.

The plaintiffs' case finally came to trial in April 1984 after various amendments and dismissals.[1] At the close of the evidence, plaintiffs asked that their claim under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., be submitted to the jury. After considerable discussion, the court agreed. After submission, the jury interrupted its deliberations to ask if negligence was sufficient to find a violation under Title VI. The district court instructed the jury that, to award compensatory relief, they must find intentional discrimination. The jury subsequently returned a verdict against the plaintiffs on all counts.

In their post-trial motion, the plaintiffs requested that the court enter declaratory and injunctive relief or grant a new trial.

---

**1.** *See Craft v. Board of Trustees,* 516 F.Supp. 1317 (N.D.Ill.1981) (motion to dismiss by defendant).

The motion was denied without opinion, and this appeal followed.

## II

Plaintiffs raise two issues in their appeal: First, did the district court properly instruct the jury that proof of discriminatory intent is an essential element of a Title VI claim. Second, should the district court have entered separate findings of fact and conclusions of law with regard to plaintiffs' claim for equitable relief.

■ The plaintiffs contend that the district court appeared to apply an erroneous legal standard to their Title VI claims. They argued at trial that the school's failure to implement remedial programs did not provide them with an "organized standard program of assistance and remediation." This alleged deficiency, they assert, violated Title VI. The district court, in its instructions to the jury, indicated that, to recover any compensatory relief, the plaintiffs were required to show that a discriminatory purpose resulted in the school's failure to comply with Title VI. The plaintiffs now argue that this was legal error, and they invite our attention to the Supreme Court decision in *Guardians Association v. Civil Service Commission,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983). In *Guardians,* five justices joined in holding that Title VI reached non-intentional discrimination because the agency regulations implementing Title VI prohibited the expenditure of federal funds in a manner that had a discriminatory impact. This interpretation was sanctioned by the Court in its recent decision in *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). However, the two opinions read together make clear that only limited prospective relief is available under a theory of disparate impact. As *Alexander* makes clear, "Title VI *itself* directly reached only instances of intentional discrimination." 105 S.Ct. at 717 (emphasis supplied). We have consistently required "proof of intentional discrimination ... as a basis for compensatory relief" in Title VI claims. *Timms v. Metropolitan School District,*

722 F.2d 1310, 1318 n. 4 (7th Cir.1983) (citing *Guardians,* 463 U.S. at 607 n. 27, 103 S.Ct. at 3235 n. 27). In light of the Court's opinion in *Alexander,* we see no reason to disturb our earlier holdings, for the current position of the Court is that the granting of compensatory relief under section 2000d requires proof of discriminatory intent. Accordingly, we find that the district judge's instruction to the jury was correct.

Plaintiffs also contend that the district judge was required to enter separate findings of fact pursuant to Fed.R.Civ.P. 52(a) with respect to their equitable claims. We disagree. In their post-trial motion, plaintiffs made only two passing references to a disparate impact theory. One was subsumed in a discussion of the plaintiffs' intentional discrimination theory, R. 201 at 2 ¶ 2, and the other related to the plaintiffs' dissatisfaction with the jury instruction given by the judge on the Title VI claim.

■ We believe that no separate findings of fact were warranted in this case. The disparate impact theory was not fairly presented to the judge as a basis for awarding equitable relief. It is well-settled that the plaintiffs "cannot present to this court ... as a ground for reversal an issue which was not presented to the trial court." *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1333 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1975) (citation omitted). The original and amended complaints contained allegations of intentional discrimination only. At the instruction hearing, plaintiffs' counsel asked the judge if he would amend the pleadings to conform to the evidence by adding a Title VI claim against these defendants. Tr. at 1584. Leave was granted, and the judge permitted an instruction to go to the jury on intentional discrimination within the meaning of 42 U.S.C. § 2000d. At no point in this discussion were the regulations, which according to *Guardians* and *Alexander, supra,* are the only avenue by which a party may state a

claim based on a disparate impact theory, mentioned to the court. The regulations, 45 C.F.R. § 80 *et seq.*, are not mentioned in the post-trial motion. The complaint was never formally amended to include even the Title VI intentional discrimination claim much less to state a claim based on disparate impact. Moreover, plaintiffs declined to file a brief in support of their post-trial motion for equitable relief even though such a brief would have alerted the court as to the nature of their claim. *See* Tr. at 1845. They did not request oral argument on the motions.

This case proceeded from start to finish on a theory of intentional discrimination. We are not prepared to hold that the district judge had adequate notice that the plaintiffs sought to recover equitable relief based on regulations never mentioned before the district court. As this court has stated in a different context, "[t]he district judge was not obliged to remedy the deficiencies of the [plaintiffs'] trial preparation." *Abernathy v. Superior Hardwoods, Inc.*, 704 F.2d 963, 970 (7th Cir.1983).

The only theory fairly presented to the court was intentional discrimination. That issue was decided by the jury. It is well-settled that the "court may not make findings 'contrary to or inconsistent with the jury's resolution ... of that same issue as implicitly reflected in its general verdict ... on the damages claim.'" *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir.1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979) (citation omitted).[2] Accordingly, we find that no separate findings of fact were required to be entered.

Affirmed.

**2.** In any event, it is clear that he would not have done so. After the jury's verdict, the trial judge remarked:

I must say this, Mr. Craft and Mr. DeSalle, you had probably one of the best representations I have ever seen here in Federal Court. I know you have had other lawyers who were not too anxious to try this case for obvious reasons. I can tell you that had this case been

tried to the bench, my judgment would have been the same as the jury's and, apparently, your other lawyers had that feeling. Tr. at 1843. At the end of the proceedings the trial judge stated, "[w]ell, as I indicated before the jury, it was a well tried case. But I don't think Clarence Darrow resurrected could have gotten any relief in this case." Tr. at 1848.